THE STATE, DEFENDANT IN ERROR, v. ELWOOD JOHNSON. PLAINTIFF IN ERROR.

Submitted December 12, 1916—Decided March 5, 1917.

The receipt of money which has been unlawfully or fraudulently obtained from another person, the receiver thereof knowing it to have been so obtained, is within the purview of section 166 of the Crimes act, as amended by *Pamph. L.* 1906, *p.* 431, relating to the receiving of stolen goods.

On error to the Monmouth Quarter Sessions

Before GUMMERE, CHIEF JUSTICE, and Justices TRENCHARD and BLACK.

For the plaintiff in error, *Halsted H. Wainright.*

For the state, *Charles F. Sexton,* prosecutor of the pleas.

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE. The plaintiff in error was convicted upon an indictment which, as amended by leave of the trial court, charged that on the 17th day of July, in the year 1914, he, the said Elwood Johnson, did receive and have from one Charles Harvey, $2,547.54 of the moneys, goods and chattels and other valuable things of one Agnes Crosbie before then feloniously, unlawfully and fraudulently obtained, taken and converted by said Harvey, he, the said Elwood Johnson, then and there well knowing said moneys to have been so obtained, taken and converted by said Harvey.

The indictment was intended to charge a violation of section 166 of the Crimes act, as amended May 14th, 1906 (*Pamph. L., p.* 431) ; and the first ground upon which we are asked to set aside the conviction is that the offence set out in the indictment is not within the purview of the sec-

tion referred to. The language of the act is, "Any person who shall receive or buy any goods or chattels or chose in action, or other valuable thing whatsoever, that shall have been stolen from any other person, or taken from him by robbery, or otherwise unlawfully or ˙fraudulently obtained, taken or converted * * * knowing the same to have been stolen or taken by robbery, or so obtained, taken or converted, &c., shall be guilty of a misdemeanor." The present contention is that the legislature did not intend to include money in the descriptive words, "any goods or chattels, or chose in action, or other valuable thing whatsoever," used in the statute; and the case of *State* v. *Calvin,* 22 *N. J. L.* 207, is appealed to as decisive upon this point. In that case the defendant was indicted for and convicted of receiving a large number of bank bills amounting in value to $4,000 of the property, goods and chattels of Drew, Robinson & Company, well knowing said bank bills were taken by robbery, &c. The indictment was founded upon the seventy-second section of the Crimes act of 1846, which provided that "If any person or persons shall receive or buy any goods or chattels that shall be stolen or taken by robbery from any other person, knowing the same to have been so stolen or taken by robbery, &c., he shall be ˏdeemed guilty of a high misdemeanor." It was held by the Supreme Court that bank notes are not "goods or chattels," within the meaning of the statute, and that, therefore, the receiver of stolen bank notes could not be indicted thereunder. The case was decided in 1849, and some two years afterward, on February 26th, 1852, the following act was passed by the legislature: "If any·person or persons shall receive or buy any bank bill or note, bill of exchange, order, draft, check, bond, or promissory note for the payment of money, that shall be stolen or taken by robbery from any other person or persons, or corporation, knowing the same to have been so stolen or taken by robbery, he shall be deemed guilty of a high misdemeanor." *Nix. Dig.* (*4th ed.*) 210. It may be reasonably presumed that this later act was passed for the purpose of meeting the difficulty found to exist in the act of 1846 as construed in State

*v.* Calvin, but whether this was its primary purpose or not, it certainly did meet that difficulty. These two provisions remained upon the statute books as independent enactments until the revision of our Crimes act in 1874, and they were then merged in section 147 of that act (*Revision of N. J., p.* 253), which declares that "If any person or persons shall receive or buy any goods or chattels, or chose in action, or valuable thing whatsoever, that shall be stolen from any other person, or taken by robbery from him, knowing the same to have been stolen or taken by robbery, &c., he shall be deemed guilty of a high misdemeanor." That the purpose of the revisers was to merge these two statutes in the section just cited is manifest from the use of the words "or chose in action, or valuable thing whatsoever" (the latter clause being all embracing), and the disappearance from the statute book, except as found in this section, of the act of February 26th, 1852. The revision of 1898 retained that of 1874 without change (*Pamph. L.* 1898, *p.* 839, § 166), and the amendment of 1906 merely enlarges the scope of the statute by embracing property not stolen or taken by robbery, but otherwise unlawfully or fraudulently obtained, taken or converted.

We conclude, therefore, that the receipt of money which has been unlawfully or fraudulently obtained from another person, the receiver thereof knowing it to have been so obtained, is within the purview of the statute upon which the present indictment is founded.

It is next contended on behalf of the plaintiff in error that if it be considered that money is a valuable thing, within the meaning of the statute, the indictment is nevertheless defective, because it fails to show the kind of money; the argument being that the indictment should not only state the amount received by the defendant, but should specify that it was good and lawful money of the United States. But the answer to this contention is that by section 50 of our Criminal Procedure act (*Comp. Stat., p.* 1836), it is provided "In every indictment in which it shall be necessary to make any averment as to any money or any note

of the United States of America, or of any national or state bank, or any other bank, or any postal currency, it shall be sufficient to describe such money, or currency, or note, simply as money."

It is next contended that there was no legal evidence before the court that the money of Agnes Crosbie had been unlawfully and fraudulently obtained by Charles Harvey, or that the defendant, when he received it, knew that it had been so obtained and converted. The assertion that there was no evidence of Harvey's misconduct is based upon the theory that this could only be proved by the production of the record of his conviction of that offence. But why counsel thinks this to be the case he does not make plain to us by his argument, and, manifestly, it is without substance. As to Johnson's knowledge of the misappropriation of these moneys by Harvey we find in the record sent up ample evidence to justify the jury in resolving that factor against him.

Lastly it is argued that the court erred in failing to instruct the jury that unless the circumstances of the case were such as to satisfy a man of ordinary intelligence and caution that these moneys had been embezzled by Harvey, the defendant should be acquitted. It is enough to say, in disposing of this contention, that no request to so charge was submitted to the trial court, and that no exception was taken to the instruction to the jury as delivered. Other errors were assigned by the defendant, but as they have not been referred to either in the brief or in the oral argument submitted in his behalf, we have considered them as having been abandoned, and consequently have not examined them.

On the whole case we conclude there should be an affirmance.